FILED
2021 Jan-04  PM 03:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

| | | |
|---|---|---|
| **MONICA HARPER** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  6:20-cv-00004-ACA** |
| | } | |
| **ANDREW SAUL,** | } | |
| **COMMISSIONER OF SOCIAL** | } | |
| **SECURITY,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Monica Harper appeals the decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits.  Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

## I.      PROCEDURAL HISTORY

Ms. Harper alleges that her disability began on March 30, 2017.  (R. at 24). She applied for a period of disability and disability insurance benefits on June 1, 2017.  (R. at 177–83).   Initially, the Social Security Administration denied Ms. Harper's application.  (R. at 87–91). Ms. Harper requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing in February 2019

and issued an unfavorable decision on March 12, 2019. (R. at 19–68). The Appeals Council declined Ms. Harper's request for review on November 23, 2019. (R. at 1). The Appeals Council's denial of review makes the Commissioner's decision final and ripe for the court's judicial review. *See* 42 U.S.C § 405(g).

## II.   STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists 'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Winschel*, 631 F.3d at 1178). The court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "'scrutinize the record as a whole to determine if the decision reached is reasonable

2

and supported by substantial evidence.'"   *Henry*, 802 F.3d at 1267 (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)).  Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).  The Commissioner is charged with the duty to weigh the evidence, resolve material conflicts in testimony, and determine the case accordingly. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986).  The ALJ's decision must be affirmed where it is supported by substantial evidence in the record as a whole. *See Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir. 1990); *Baker o/b/o Baker v. Sullivan,* 880 F.2d 319, 321 (11th Cir. 1989).

## III.   ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process.  The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

3

Under Eleventh Circuit precedent, "to demonstrate that pain renders her disabled, a plaintiff must 'produce evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain." *Edwards v. Sullivan,* 937 F.2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986)).

Here, the ALJ applied the two-step process and found that "[o]verall, the claimant's allegations of severe pain and functional limitations related to her impairments are inconsistent and unsupported by the objective evidence," and that the residual functional capacity set out in the report "accommodates the claimant's reasonable symptoms from her impairments." (R. at 30). The ALJ found that Ms. Harper had the following impairments: status-post left knee arthroscopy, osteoarthritis of the right hip, status-post left hip arthropathy, temporomandibular joint dysfunction syndrome with a history of multiple surgeries and left-sided Bell's palsy. (R. at 24).

At step three, the ALJ found that Ms. Harper did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Subpart 404, Appendix 1. (R. at 26). The ALJ determined that Ms. Harper had the residual functional capacity

> to perform sedentary work as defined in 20 CFR 404.1567(a) except the individual could occasionally climb ramps and stairs, stoop, kneel, crouch and craw, never ladders, ropes or scaffolds.  The individual can occasionally push and pull with the left lower extremity.  The person can have only occasional exposure to extremes of cold as well as vibration, no exposure to work hazards such as unprotected heights and dangerous machinery.

(R. at 26).  Relying on testimony from a vocational expert, the ALJ concluded that Ms. Harper had the residual functional capacity to perform her past relevant work as a customer service representative.  (R. at 31).  Further, the ALJ found that Ms. Harper had the residual functional capacity to perform other jobs existing in the national economy, such as an order clerk, charge account clerk, or document preparer.  (R. at 32).  Accordingly, the ALJ determined that Ms. Harper was not under a disability as defined by the Social Security Act. (R. at 31).

## IV.   DISCUSSION

Ms. Harper argues that the court should reverse and remand because the ALJ's determination was not based on substantial evidence.  (Doc. 9 at 12).  She argues that the ALJ failed to properly consider evidence in the record that supported her disability, and "failed to properly address the effect of Ms. Harper's pain."  (*Id.* at 13).

Ms. Harper contends that the ALJ "cull[ed] the record for selective references, ignoring comments that did not support his conclusion."  (Doc. 9 at 13) (quotations omitted).  Specifically, Ms. Harper argues that the ALJ failed to properly consider

evidence of Ms. Harper's back pain (*id.* at 13) and temporomandibular joint and muscle disorder ("TMJ") (*id.* at 15).  The court will address each issue.

      A.    *Medical Records of Back Pain*

The ALJ found that Ms. Harper's back pain was not a severe impairment.  (R. at 25).  But according to Ms. Harper, the ALJ "trivializes Ms. Harper's complaints of back pain" and ignores "the records of Dr. Gary Russell when evaluating Ms. Harper's back pain."  (Doc. 9 at 13).  Ms. Harper points to where Dr. Russell noted "soreness in the low back" and that his examination revealed "narrowing at L5-S1."  (R. at 364–65).  Dr. Russell also noted that Ms. Harper's back issues were "creating coolness in the lower extremities [and] occasional tingling."  (R. at 361).  In short, Ms. Harper points the court to evidence that could support a finding of disability due to back pain.

But the standard of reviewing whether an ALJ's decision is based on substantial evidence is a deferential one.  *See Crawford*, 363 F.3d at 1158–59 (holding that the court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings") (quotations omitted).  And the record here reflects that the ALJ did consider Ms. Harper's back pain.  (R. at 25–30).  Further, the ALJ cites Dr. Russell's records, stating that his "notes show the claimant underwent left hip total replacement on March 13, 2018."  (R. at 28).  The ALJ points to Dr. Russell's records showing that the

> left knee MRI showed a small amount of joint effusion, a baker's cyst, striated appearance of the ACL thought to represent mucoid degeneration with chondromalacia of the patella—grade 2, and signal alteration of the posterior horn of the medical meniscus thought to represent fraying.

(R. at 29).  The ALJ also cites Dr. Russell's records reflecting that on October 2, 2018, "the claimant reported left knee pain upon extension. On examination, there was no pain in the patellofemeral joint. . . .  She was advised to start over the counter joint medication and was released to return as needed." (*Id.*).

Far from ignoring the evidence from Dr. Russell's records, the ALJ referred to them extensively.  The ALJ and Ms. Harper simply came to different conclusions about what those records say about her back pain.  But even if evidence could support disability, the court will not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ.  *Winschel*, 631 F.3d at 1178 (quotation marks omitted).  Thus, Ms. Harper's argument that the evidence of back pain in the record requires the court to reverse fails.

### B.     *Evidence of TMJ*

Ms. Harper next argues that the ALJ failed to consider "the cumulative effects Ms. Harper's TMJ has on her overall ability to function." (Doc. 9 at 15).  Her second argument fails for the same reason as the first.  Ms. Harper's TMJ can cause headaches, and she argues that the ALJ incorrectly found that her headaches mostly resolved with surgery on September 28, 2017. (R. at 25; Doc. 9 at 16).  Ms. Harper

argues that the "date cited by the ALJ does not appear anywhere in Dr. Louis's records." (Doc. 9 at 16). To Ms. Harper, this is evidence that the ALJ did not "fully review the medical evidence in this case." (*Id.*).

But the ALJ correctly cited the record, and the record shows that Ms. Harper had temporomandibular joint replacement on September 28, 2017. (R. at 436). In contrast to Ms. Harper's claims, the date cited by the ALJ appears throughout Dr. Louis's records. (*See, e.g*, R. at 437, 440, 441, 443). The ALJ found that "few, if any, of the post-surgical notes show complaints of headaches by the claimant, suggesting that her TMJ surgery resolved the issue causing her headaches." (R. at 29). And although Ms. Harper points to evidence in the record of continued headaches (doc. 16), the ALJ correctly found that "overall, the claimant reported improvements in her TMJ functionality and pain symptoms." (R. at 29). For example, Dr. Louis's notes from a January 10, 2018, visit state that "[o]verall she reports improvements in her TMJ functionality and pain symptoms." (R. at 444). And notes from a July 28, 2018, visit reflect that Ms. Harper was "doing well although she does have some retained numbness and tingling along the [left] side of her face." (R. at 440). Thus, the ALJ based the finding that her symptoms had improved post-surgery on substantial evidence. (R. at 25).

Ms. Harper also argues that the ALJ failed to consider Ms. Harper's necessary mouth exercises. (Doc. 9 at 16). Ms. Harper claims that she uses her TheraBite

8

device four to six times a day for fifteen-minute intervals, for a total of an hour and a half each day.  (*Id.*).  But the ALJ was not required to include the TheraBite evidence in the report.  "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision," allows the court to determine whether the ALJ "considered [the claimant's] medical condition as a whole."  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).  Even without mentioning the TheraBite device, the ALJ's report makes it clear to the court that the ALJ considered the entire record.  Thus, the court will affirm the ALJ's decision because it is supported by substantial evidence.

## V.      CONCLUSION

Substantial evidence supports the ALJ's denial of Ms. Harper's application for a period of disability and disability insurance benefits, and this court **WILL AFFIRM** the Commissioner's decision.

The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this January 4, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE